CHIASSON, Judge.
Plaintiffs, Agnes Walker Navarre[1] and her children[2], filed suit against the defendants Robert E. McGill, W. L. Ryder and Richard Friedberg, for the total amount of a promissory note executed by the defendants in favor of Maxie J. Navarre.
All three defendants signed as makers of a promissory note dated September 6, 1974[3] *691 which designated Maxie J. Navarre as payee. The note became due on December 81,1974. Maxie J. Navarre died on November 25, 1974, and his heirs filed suit on May 13, 1975, to collect the $30,000 due on the note, plus 8% interest and 20% attorney’s fees.
The defendants answered the petition asserting affirmatively the defense of failure of consideration. In addition, W. L. Ryder and Richard Friedberg filed a reconventional demand against the plaintiffs asserting that Maxie J. Navarre and the plaintiffs breached an agreement to buy and sell 1,553 acres of land executed between Navarre and Ryder. These defendants seek damages in the amount of $490,348.94.
The note was a part of a series of transactions that took place in 1974. A complete review of the events leading up to the signing of the note is necessary for an understanding of the issues presented.
Robert McGill owned approximately 12,-500 acres of farm land in Avoyelles Parish in 1974. Because of financial difficulties, McGill started to sell some of the land. In July of 1974, McGill and Maxie Navarre entered into a contract to buy and sell approximately 1,550 acres of land. A supplemental agreement entered into later that day by the two men reduced the acreage to 800 acres. Navarre deposited $5,000 toward the purchase price of the property.
Finally on July 24,1974, a contract to buy and sell 1,216 acres was consumated by the parties with the purchase price fixed at $655,000. Mr. Navarre deposited with B. C. Bennett, Jr., an attorney in Marksville, the sum of $130,000 to be applied to the purchase price.
On September 6,1974, a number of transactions took place which included all of the parties. The contract to buy and sell previously entered into between McGill and Navarre was cancelled for the consideration of $10. The $130,000 held in escrow by Bennett was returned to Navarre in two checks, one in the amount of $100,000 and the other in the amount of $30,000.
This cancellation enabled McGill, who was still experiencing financial problems, to sell all of his land to Baton Rouge Production Credit Association (PCA), which held a second mortgage on the property.
PCA then granted an option to purchase the property to W. L. Ryder. Ryder paid $71,910.49 in cash for the option and obligated himself to pay three monthly installments of approximately $21,000 each to maintain the option.
Next Ryder entered into an option agreement with Navarre whereby he agreed to sell one of three tracts of land to Navarre. The option did note that title did not presently vest in Mr. Ryder — but in PCA — but that Ryder did have an option from PCA to buy the land. Mr. Navarre was to choose the tract he intended to purchase by October 1, 1974. As stated in the agreement, “the consideration of this agreement is the cancellation by Navarre of that certain agreement to buy and sell between Robert E. McGill, Jr., and Maxie Navarre, dated July 24, 1974.” No cash deposit is reflected as being part of this agreement. The defendants contend that a check in the amount of $30,000 written by Navarre to Ryder was a part of this transaction. An agreement concerning the mineral rights to the tracts of land was also entered into that day by the parties.
All of the above described documents executed on September 6, 1974, were passed before B. C. Bennett, Jr., a notary public. Four other documents bear a September 6, 1974, date and are pertinent for an understanding of the overall scheme.
The promissory note, the basis for this suit, bears the September 6, 1974, date, the signatures of all three defendants and is in the amount of $30,000. A check in the like amount made out to Ryder had a September 6,1974, date as well. On the lower left hand corner of the check was the word “Loan.”
Although not in authentic form, a letter dated September 6, 1974, from Ryder to Richard Friedberg purported to transfer a *692 one-half interest in the PCA option to Friedberg. The consideration for this one-half interest was $102,500.
An agreement between the three defendants was also entered into that date whereby all three would have an interest in the PCA option. Ryder and Friedberg agreed to pay $185,777.85 worth of debts for Mr. McGill. In exchange, Mr. McGill transferred to Ryder and Friedberg his rights in an option he had with J. Harry Henderson to buy some property. In addition, Mr. McGill would contact certain interested purchasers for the land the joint venture was buying.
The defendants contend that the check written by Navarre to Ryder was a deposit on the option agreement. The plaintiffs aver that the check was a loan to Ryder and the other defendants since they needed money to complete all of the transactions of the day which involved paying some of McGill’s creditors and exercising the option with PCA. The check with the word “Loan” on it seems to buttress this version.
The entire scheme continued with F. A. Little, Jr., an attorney for Friedberg, writing a letter dated October 4, 1974, informing Navarre that he failed to exercise his option in selecting one of the tracts of land. Little informed Navarre that Ryder designated Tract 1 as the property to be transferred. A copy of the letter was sent to Mr. Navarre and to the three defendants.
A proposed agreement to purchase was submitted to Navarre which would have transferred the $30,000 he had loaned to the defendants into a deposit for the purchase agreement. After consulting with an attorney, Mr. Navarre declined this agreement with the $30,000 being considered a deposit.
Finally on November 19, 1974, an agreement to purchase and sell realty was entered into between Ryder and Navarre to buy 1,135 acres for $425 per acre. Fried-berg acted as Ryder’s agent under a power of attorney. There is no mention of any deposit for this agreement. The agreement obligated the seller to tender a legal, valid and merchantable title and to pay taxes for the past years before the vendee was obligated to purchase. The agreement again recognizes that title to the property vests in PCA, but that Ryder had an option to buy the land. A supplemental agreement was entered into that day in which Navarre would exchange 480 acres of land that he owned in Mississippi in lieu of paying a portion of the total purchase price.
On November 25, 1974, Maxie Navarre died leaving his wife and children as heirs. Shortly thereafter, Mrs. Navarre through a longtime friend, D. A. Moody, contacted Mr. McGill seeking a release from the purchase. According to both Mrs. Navarre and Mr. Moody, McGill orally agreed to such a release.
Suit was subsequently brought on the note by the plaintiffs contending that Max-ie Navarre loaned the defendants $30,000 for the joint venture to accomplish the overall scheme. They contend the note represented the loan. Defendants assert that the note is without consideration in that the $30,000 check was only a deposit for the option agreement of September 6,1974, and the purchase agreement of November 19, 1974. In addition, Ryder and Friedberg contend that Maxie Navarre and his heirs breached the agreement to buy by not purchasing the property.
W. L. Ryder, although properly served, failed to appear at trial. The trial court dismissed, with prejudice, his reconventional demand. In addition, judgment was rendered against Mr. Ryder on the main demand and no appeal has been taken from that judgment. We consider that judgment final.
The trial court also dismissed the recon-ventional demand of Richard Friedberg after the completion of the evidence holding that he was not a party to the option agreement executed between Ryder and Navarre. On the plaintiff’s main demand, the trial court found that Maxie Navarre had loaned $30,000 to the defendants by way of the check for the completion of the overall scheme. It found the loan was sufficient consideration for the note. In addition, it found since all the defendants had an interest in paying the debts of McGill and pur *693 chasing the option from PCA, there was consideration on the part of all defendants. It awarded judgment in favor of the plaintiffs for $30,000, plus interest at the rate of 8% and attorney’s fees in the amount of 20%.
Friedberg and McGill appealed the decision of the trial court. Although not listed as a specification of error, the defendants argue the trial court misconstrued their affirmative defense. They contend that there was a failure of consideration for the note instead of a lack of consideration. In support of their argument they cite the cases of X-L Finance Co. v. Wilson, 217 So.2d 467 (La.App. 1st Cir. 1968) and Sciortino v. Leach, 242 So.2d 269 (La.App. 4th Cir. 1970). (See also La. R.S. 7:28).
In those cases there was a failure of consideration because the cause for giving of the note never materialized. This would be a good defense in this case if the note was given as a deposit as contended by the defendants. The note would have been contingent upon the execution of an act of sale which never materialized. However, the trial court found that the note was actually for a loan made to the defendants so that they could pay the debts of McGill and pay the option to PCA. We agree with this finding.
This finding of fact is well supported by the evidence in the record. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The check written to Ryder had the word “Loan” written on it. This was a. new check written by Navarre instead of the $30,000 check Bennett had just written him. The check was endorsed by Ryder and deposited in Bennett’s escrow account which account was used to pay the debts of McGill associated with his property. Bennett testified that he considered the check to be a loan rather than a deposit. In addition, the option to buy and sell of September 6,1974, stated that the only consideration was the cancellation of the Navarre-McGill purchase agreement.
Under the Negotiable Instrument Law there is a presumption that the instrument was issued for valuable consideration and that every person whose signature appeared on the instrument had received value. La. R.S. 7:24. We further find that the consideration consisted of money actually loaned to the defendants to be used in paying the creditors of McGill and obtaining the option from PCA. La. R.S. 7:25.
Defendants also contend that the trial court erred in finding that Friedberg supplied money to pay the encumbrances on McGill’s property and to pay PCA for the option, as well as finding that the “defendants” needed $30,000 to close the deal, when only Ryder had an option from PCA. Friedberg testified that he wanted an interest in the property on September 5, 1974, after an inspection of the property. He stated that he and Ryder had reached an agreement in which he would advance Ryder the money for the transaction. It was this money along with the $30,000 check which was used to pay the debts and the option. Although only Ryder had the option with PCA, it is evident from the record that all three defendants were involved in this joint venture.
Defendant’s last contention is that the trial court erred in dismissing the recon-ventional demand of Friedberg and McGill. We take note that the reconventional demand was only filed on behalf of Ryder and Friedberg. Since the judgment is final as to Ryder, we need only to consider the contention of Friedberg. The gist of the demand is that Navarre and/or his heirs failed to execute the option to purchase agreement of September 6, 1974, and the purchase agreement dated November 19, 1974.
The option to purchase was transferred into the purchase agreement of November, 1974, when Ryder designated what tract of land he was going to sell Navarre. One of the conditions of the purchase agreement was not satisfied which would have compelled Navarre or his heirs to buy the property. Title to the property was still vested in PCA although Ryder had an option. It was a condition of the agreement that the vendor tender a legal, valid and merchanta *694 ble title to the vendee. Friedberg testified that title was never tendered to Navarre or his heirs.
The language of the contract stated that in default of this condition, “this contract shall terminate and both parties shall be relieved of all obligations hereunder without liability or responsibility of any kind or character.” Since title was never tendered to the vendee, a requisite condition was never fulfilled and the contract was thus breached relieving both parties of all obligations thereunder. The dismissal of the reconventional demand was therefore correct.
For the reasons assigned, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.

. Agnes Walker Navarre was the surviving spouse of Maxie J. Navarre. At the time of trial she remarried and is now Agnes Walker Richard. She is suing individually and as natural tutrix of Marie Agnes Navarre.

. The children of Maxie J. Navarre include Steve Milton Navarre (suing on his own behalf); Bruce Wayne Navarre (suing on his own behalf); Bennett Wade Navarre (was a minor at the time the suit was filed but later was added as a proper party plaintiff); and Marie Agnes Walker Navarre (represented by her natural tutrix Agnes Walker Navarre). Steve Milton Navarre died during the pendency of this action and his mother, brothers and sister were substituted as proper parties to this action.

.Since this note is dated September 6, 1974, we must consult the Negotiable Instrument Law, La. R.S. 7:1, et seq., rather than the Commercial Law, La. R.S. 10:1, et seq. See Fidelity Nat. Bank of Baton Rouge v. Mills, 351 So.2d 800 (La.App. 1st Cir. 1977).